Taliaeebeo, J.
The plaintiffs, holders of two promissory notes, each for $13,489 58, with a large accumulation of interest, and secured by mortgage on a plantation in the parish of Iberville, took out an order of seizure and sale against the property, now owned by and in possession of the defendant. This proceeding was commenced in January, 1866.
In the latter part of March of the same year, Hobson, representing himself as the owner and holder of various promissory notes for large amounts, also secured by mortgage on the same property, came in by way of third opposition, and obtained an injunction to restrain the sale of the mortgaged premises, alleging that the obligations upon which the plaintiffs were proceeding were prescribed, and especially averring that the mortgage which had been given to secure their payment, was lost for want of the reinscription within ten years of the time of its inscription. He prayed that in the event of a sale, the proceeds of the property should be applied to the payment of his mortgage debt, claiming for himself priority of mortgage.
The proceeding via exeouiiva was, at the plaintiffs’ instance, changed to the via ordinaria.
After trial had, judgment was rendered recognizing the plaintiffs’ pretensions to the right of first mortgage, and directing the proceeds, or a *386 sufficient amount thereof, to be applied first, to discharge the two notes of plaintiff'and interest thereon, and the residue to be applied to the payment of a judgment obtained by the opponent and plaintiff in injunction against Mrs. Emily Woolfolk on the 11th of May, 1866.
From this judgment of the lower court, the plaintiff in injunction appeals.
The facts we find to be these:
The plaintiffs, heirs of lessee Batey, deceased, by their attorney in fact, Robert McBeth, on the 18th of January, 1853, sold to Washington Barrow and John S. Barrow, a plantation and a number of slaves located thereon for $112,500, of which the sum of $20,000 was paid in cash, and for the remainder the purchasers executed seven promissory notes, falling due respectively on the 1st day of January, in the years 1855-6-7-8-9, ’60 and 1861.
The note, falling due 1st January, 1855, being drawn for $11,562 50, the others for $13,489 58 each.
These notes were all paid except the two last, viz: the note falling due 1st January, 1860, and the one falling due 1st January, 1861; all the interest on these two notes was paid up to 2d February, 1862. The order of seizure and sale was issued on the 31st January, 1866. The payment of the interest at the time entered upon the notes is fully proved, establishing clearly that the notes are not prescribed.
The mortgage was by authentic act, and contains the pact de non alienando. The act of sale and mortgage was recorded in the parish of Iberville, on the 18th February, 1853. This mortgage has never been reinscribed.
On the 12th of February, 1856, Washington Barrow sold his undivided half of the property to William Patrick and Joseph B. Woolfolk at the price of $75,000 — $10,000 of which was paid in cash; and for the credit portion three notes, falling due as follows: one for $6,255 21 on the 1st February, 1862; the next for the like sum, and the third for $18,765 63, the last two becoming due on the 1st February, 1866.
Ten notes, of smaller amounts, were executed also by the purchasers for the payment of the annually accruing interest on the larger notes. Patrick' and Woolfolk, in this act of sale, mortgaged the property to secure the payment of the notes, and assumed in part payment of the price, “to pay the one-half of the mortgage debt due by Washington and John S. Barrow, on the property above sold, as por accouut of sale and mortgage passed before Louis Petit, late recorder of this parish, on the 18th of January, 1853, being in principal on this day the sum of $33,723 95, which mortgage debt up to the said sum the said purchasers assume to pay in the same manner and form, as the vendor was bound to pay the same, under the act of the 18th of January, 1853, above cited, and to which reference is here specially made.”
The other undivided half, part of the property purchased by W. and and J. S. Barrow from the heirs of Batey, was afterwards, on the 27th of March, 1856, purchased by Patrick and Woolfolk at the probate sale of the succession of John S. Barrow, deceased; thus becoming owners of the entire property.
This purchase was made at the sum and price of $98,012 48 — $10,000 *387 in cash, and on a credit of several years for the remainder; for the payment of which he executed thirteen promissory notes of various amounts, and made payable at various intervals.
In conformity with the conditions of the sale, they executed a 'mortgage in favor of the succession to secure the payment of the notes, and assumed “ to pay the one-half of the mortgage debt due by Washington and John S. Barrow on the said property, as by act of sale and mortgage passed before said Petit, late recorder of this parish, on the 18th day of January, 1853; said mortgage debt consisting in five hypothecary notes of $13,489 58, each, amounting in all in principal to $67,447 90, the undivided half being then in principal the sum of $33,723 95. They contracted “ to pay the said sum of $33,723 95 in the same manner and on the same terms as the said Washington and JohnS. Barrow bound themselves, to pay by act of sale to them under date of the 18th of January, 1853, above referred to.”
On the 16th July, 1859, Joseph B. Woolfolk and William Patrick sold the entire property to Mrs. Emily Woolfolk, the present owner, for the price of $225,000. The sum of $71,363 38 was paid down in money or its equivalent. For the remainder, this purchaser assumed to pay:
1. A mortgage debt due the heirs of Jesse Batey, deceased, amounting in principal and interest on the 1st of February, 1859, the day the present contract was entered into, all previous interests being paid to the sum of thirty-eight thousand six hundred and twenty-six dollars and ninety cents.
2. A mortgage debt due Washington Barrow, amounting te the sum of $31,276 65.
3. A mortgage debt due the estate of John S. Barrow by the vendors for the sum of $31,276 65, as the whole is fully stated and specified in the proces-verbnl of the adjudication and sale of the said property by the sheriff, on the 27th March, 1856.
In addition to these assumpsits the purchaser gave three promissory notes, amounting together to $42,457; one of them to Patrick for. his interest in the property, and two others to Woolfolk for his, and executed a mortgage on the property purchased to secure their payment.
The opponent, Hobson, averring himself to be the owner and holder of twelve promissory notes, six of them the notes of Patrick and Wool-folk, to Washington Barrow, and six, the notes of the same makers, to the estate of John S. Barrow, the whole amounting to $66,041 61, with interest, secured by mortgage on the property spoken of, caused the mortgage of Washington Barrow and John S. Barrow, given to the heirs of Batey, to be erased from the books of the mortgage office, more than ten years having elapsed since its inscription on the record, and no reinscription having been made. He cites various parties in interest, prays judgmeut against them in solido, with recognition of his right of mortgage as being superior to any other, that the heirs of Batey be decreed to have no mortgage on the property, and that the proceeds of sale of the mortgaged premises be first appropriated to the payment of his debt, and if any residue that it be distributed to the other creditors according to law.
On the part of Batey’s heirs, it is argued that the assumpsits of the sev* *388 eral vendees of the property to pay the original mortgage of W. and J. S. Barrow to their vendors, operated to preserve and continue in force the original mortgage, although it was not reinscribed within the ten years required by Article 3333 of the Civil Code. They hold that their rights and obligations existed independent of the writings which evidenced them; that the act of sale, notes executed for the price, the assumpsits to pay the original mortgage, etc., at each successive sale, the evidence was renewed, but the rights and obligations remained the same; that at each successive sale the rights of the Batey heirs upon the property have been distinctly recognized, and the obligations to them distinctly assumed by the purchaser, and the act of sale placed upon record in the mortgage office as required by law; that there was at each sale a change in the form of indebtedness, but the original obligations and the supporting liens always remained the same, and that the evidence of the mortgage and lien of the original vendors, which the law requires to be reinscribed, was successively altered, and reinscribed at each succeeding sale.
The only question of importance presented in this case is, whether, by having failed to reinscribe their mortgage of 18th January, 1853, within ten years of its date, the original vendors oan now avail themselves of it against the mortgage notes held by the opponent, Hobson, and which were executed by the several vendees subsequent to the Barrows, whose notes are held and now sued upon by the original vendors. The rule established in the case of Shepherd v. The Orleans Cotton Press. Company, 2 A. p. 100, and also in cases since (McElrath, Administrator, v. Dupuy, Curator, 2 A. 520; Hyde v. Bennett, 2 A. 799; Succession of Gremillion, 4 A. 411) rejects in an act of sale the mere recital of a previously existing mortgage, as insufficient to supply the want of reinscription of such mortgage.
The authority of these and other cases, requires also clear and definite descriptions of the mortgaged property to be given in the reciting act. The language of the Court in Shepherd v. The Orleans Cotton Press Company, is:
“Whatever be the form of the reinscription, the description of the property is one of its essential requisites. The reference to previous mortgages does not cure that defect. ”
“ The inscription is exclusively in the power of the party having an interest to make it. If he does not reinscribe, he cannot complain of losses sustained through his own neglect.”
It may be considered as a settled rule, that the reinscription of a mortgage is to be made strictly in conformity with the provisions of Art. 3333 of the Civil Code; that is, that the inscriptions are to be renewed, before the expiration of ten years, reckoning from their date as between the parties, and from the time of inscription as to third persons, in the manner in which they were first made. ”
The requirements of our law on the subject of the inscription of mortgages are founded upon the importance — in a commercial business community, where frequent changes in the ownership of property occur — >f having general publicity given in as plain, simple and effectual a manner as possible, to all the existing encumbrances upon property sub *389 ject to mortgage. This object is more easily attained by spreading the entire act upon the records in the reinscription than by any other mode:It would be hazardous to the rights of parties buying, selling and mortgaging property to recognize as equivalent to reinscription a mere brief mention, in a written instrument, of existing liens and encumbrances-upon the property conveyed or mortgaged. Such a course might lead to difficult complications and interminable confusion. The reinscription, according to Article 3333, dispenses with the examination beyond the' period of ten years preceding.
In the case now before us, whatever might be the effect of the failure to reinscribe as to third parties, the opponent, we think, cannot avail himself of that neglect. He stands in the same position that the parties do, who transferred to him the notes he interposes as entitled to priority of mortgage. They expressly undertook, as part of the consideration they gave for the property, to discharge the unpaid remainder of the price still due to the heirs of Batey, the original vendors. A special mortgage and the vendor’s privilege attached to the property in their favor. In each successive sale after the first, to Washington and John S. Barrow, these rights were respectively recognized by the different purchasers, and they assumed, quoad hoc, the attitude of mortgagors which the Barrows occupied.
Then it results, that although the notes held by the opponent are secured by mortgage upon the property in question, yet this mortgage stands now as it stood at first, postponed in favor of the one executed by the first purchasers.
This Court declared, in the case of Dupuy v. Doshiel, 17 L. R., p. 60: “That the renewal of the registry, after the ten years, will not affect an ordinary third possessor or subsequent mortgagee; but its omission cannot avail a subsequent purchaser assuming the mortgages. ” See also 6 N. S. 716 and 7 Rob. 44; 6 Rob. 419, ib 522.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed, with costs in both courts.